# Commonwealth ex rel. *v.* Brown, Appellant.

| | |
|---|---|
| *Statutes—Repeals—Local act—General act.* | 210    29 |
| A local act is not repealed by a general act on the same subject, even with | e210   4  43 |
| different or inconsistent provisions; but this rule being founded on a pre- | e210    590 |
| sumption of legislative intent will not apply when a contrary intent is | 27 SC  406 |
| clearly apparent. | 27 SC  411 |
| | 210    29 |
| | 30 SC ¹512 |
| Where the clear general intent of the legislature is to establish a uniform | 210    29 |
| and mandatory system, as in the municipal classification acts, the presump- | 215    563 |
| tion must be that the local acts are intended to be repealed. | 215   ¹568 |
| | 31 SC  535 |
| Where an act is passed to carry into effect a mandatory general provi- | 210    29 |
| sion of the Constitution, the presumption must be that it was intended to | 217    532 |
| repeal even local acts inconsistent with its terms. | 210 .  29 |
| | 219   ² 70 |
| | 219    80 |
| | 210    29 |
| | 35 SC  415 |

*Statutes — Repeal — Local and special acts — County buildings—Act of April 4, 1870, P. L. 834 and April 19, 1895, P. L. 38.*

The local Act of April 4, 1870, P. L. 834, entitled "An act relative to contracts by county commissioners in certain counties," is not repealed by the general Act of April 19, 1895, P. L. 38, entitled "An act to regulate the erection of county buildings."

*County buildings—Westmoreland county—Courthouse—Advertising contract —Specifications—Newspapers—Act of April 4, 1870, P. L. 834.*

The act of April 4, 1870, P. L. 834, provides as follows : "The county commissioners . . . . before making any contract for the erection of any new building or buildings, bridge or bridges, . . . . shall, by public advertisement, printed in not less than two weekly newspapers of the county, if so many be published therein, where the contract is to be awarded, for not less than four weeks . . . . invite sealed proposals for the same according to the specifications, which shall be written or printed in a book to be kept by the commissioners for that purpose, and kept open for the inspection of all persons for at least four weeks before the time appointed by said advertisement for the opening of said sealed proposals, and which, at the time fixed, shall be publicly opened and the contract awarded to the lowest bidder or bidders." The county commissioners of Westmoreland county fixed upon the time for opening the bids for a new courthouse as Thursday, July 19, 1903. The specifications were deposited in the office of the commissioners for a period considerably longer than the four weeks prior to July 9. Advertisements were published in two weekly newspapers of the county on Tuesdays June 16, June 23, June 30 and July 7. *Held*, that (1) it was the intention of the act that the advertisements should be published in the identical four weeks during which the specifications were to be on file immediately prior to the opening of the bids; (2) that the first publication was not required to be twenty-eight days before the opening of the bids; (3) that the advertisements complied with the requirements of the act.

Argued Oct. 10, 1904. Appeal No. 131, Oct. T., 1904, by defendant. from judgment of Superior Court, April T., 1904, No. 114, affirming order of C. P. Westmoreland Co., Nov. T., 1903, No. 634, awarding writ of preliminary mandamus in case of Commonwealth ex rel. Wm. Miller & Sons v. John H. Brown, Controller of Westmoreland County. Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Appeal from Superior Court. See 25 Pa. Superior Ct. 269.

The opinion of the Superior Court by PORTER, J., was as follows :

The proceedings to determine the necessity for the erection

of a new courthouse seem to have been conducted by those in authority in the county of Westmoreland with care, and those invested with the discretion to determine the questions arising in this important matter are conceded to have brought to the consideration thereof, painstaking deliberation.

Plans and specifications for the proposed new building were adopted by the county commissioners in June, 1901, and approved by both the judges of the court of common pleas. On August 2 of the same year, a contract was awarded for the removal of the old building, and on August 10 of the same year, the court directed the removal of the records to temporary quarters which had been prepared for their reception. Both these undertakings were promptly carried into execution. On October 23, 1901, a contract was duly awarded for the excavation and the construction of the foundation of the new courthouse to be erected in accordance with the adopted plans. This contract has long since been carried into execution.

Twice during the year 1902 bids for the erection of the building were duly advertised for, but no bid was received which met the approbation of all those whose approval was necessary to the contract on behalf of the county. On May 4, 1903, all of the county commissioners concurred in certain modifications of the specifications, which action was upon the same day approved by both the judges of the court of common pleas.

With the amended specifications as a basis, bids were invited by public advertisement and on July 9, 1903, seven contractors, all of whom seemed to be responsible, submitted bids for the work; the bids having been publicly opened, that of the relators was found to be the lowest and was accepted by the county commissioners. A contract for the execution of the work, according to the specifications, with sureties for its faithful performance, having been prepared, the same was approved by one of the judges of the court of common pleas on September 26, 1903, and on the 29th of the same month the county commissioners awarded the contract for the work to the relators, and executed the contract in the form in which it had been approved by said judge. The relators entered upon the ground and proceeded to execute the work according to the terms of the contract.

The respondent does not deny that the relators did the work for which they now demand payment, nor that according to the terms of the contract the amount is due and payable; he bases his refusal to draw his warrant for the amount upon the ground that the contract is invalid. There is no suggestion of fraud in the letting of the contract, nor that the relators were not the lowest bidders, nor that the price agreed upon was not fair and reasonable. Bids for the work had been repeatedly asked for by public advertisement, and the attention of contractors throughout the country who were capable of performing work of this character had been directly called to the undertaking.

There is no dispute as to the facts, and it has been conceded upon the argument of this appeal that the determination of the validity of this contract involves the consideration of only two questions. (1) Was the local Act of April 4, 1870, P. L. 834, entitled "An act relating to contracts by county commissioners in certain counties of this commonwealth," repealed by the general Act of April 19, 1895, P. L. 38, entitled "An act to regulate the erection of county buildings?" (2) If the local act of April 4, 1870, is still in force, then was its requirement as to public advertisement prior to the opening of the bids complied with?

The first question is so fully considered in the opinion of the learned judge of the court below, and the conclusion at which he arrived is so satisfactorily sustained by the authorities there cited that we do not deem it necessary to supplement what is said on that branch of the case. We are of the opinion that the local act of April 4, 1870, remains in force in Westmoreland county.

This leaves for consideration the sufficiency of the public advertisement of the invitation to bidders to submit sealed proposals for the execution of the work. The provision of the statute material to the inquiry is as follows: "The county commissioners . . . . before making any contract for the erection of any new building or buildings, bridge or bridges, . . . . shall, by public advertisement, printed in not less than two weekly newspapers of the county, if so many be published therein, where the contract is to be awarded, for not less than four weeks, . . . . invite sealed proposals for the same accord-

ing to the specifications, which shall be written or printed in a book to be kept by the commissioners for that purpose, and kept open for the inspection of all persons for at least four weeks before the time appointed by said advertisement for the opening of said sealed proposals, and which, at the time fixed, shall be publicly opened and the contract awarded to the lowest bidder or bidders."

The specifications for the work in question had been of record in the office of the commissioners for a period considerably longer than four weeks. The commissioners determined to fix the time for the opening of the sealed proposals for July 9, 1903, at one o'clock P. M. The invitation for sealed proposals was first published in daily newspapers, beginning more than four weeks prior to the time fixed for the opening of the bids. The statute requires the publication to be in weekly newspapers, a term which has a well-recognized meaning, that is, a newspaper published once in each week. A publication in a daily paper was not in accordance with the requirements of the statute, and such publication must be eliminated from the consideration of this question in its legal sense, however material it might be if the good faith of the officers representing the county had been called in question.

The advertisement inviting the sealed proposals for the erection of the courthouse, according to the specifications of record in the office of the commissioners, was published in two weekly newspapers of the county on June 16, June 23, June 30, and July 7, 1903, each of said days of publication being Tuesday. The notice was in due form and the invitation was for sealed proposals until one o'clock P. M., Thursday, July 9, 1903, at which time the bids were publicly opened in accordance with the terms of the notice. The only question is whether this publication in the weekly papers was in accordance with the provisions of the statute.

The statute is to be construed with a view to the purpose which it is intended to accomplish, to effect the legislative intention, and give effect to all its provisions. The purpose of this statute is to secure competitive bidding, upon equal terms, under conditions which give to all bidders full and accurate information as to the character of the work to be performed. The means used to accomplish the end are the two require-

ments, (*a*) That the specifications shall be a matter of public record "for at least four weeks" before the opening of the bids; (*b*) That the commissioners shall "by public advertisement, printed in not less than two weekly newspapers of the county, . . . . for not less than four weeks, invite sealed proposals for the same, according to the specifications."

The requirement in each case involves the element of time. The specifications must be of record "at least four weeks;" the invitation to bid on the specifications must be "printed in not less than two weekly newspapers . . . . for not less than four weeks." The invitation must refer to the specifications, in this there evidently was a purpose. An invitation to bid without a reference to the specifications as to the work to be done, would be a useless and absurd thing. The things required are intended to contribute to the same end, and in order to be effective they must be done at the same time. The record of the specifications could not accomplish the purpose of the statute if the attention of bidders was not called to the undertaking; the advertisement for bids would amount to nothing if it did not, as required by the statute, refer to the record of the specifications. The expression "not less than four weeks" is the exact equivalent of "at least four weeks."

When the legislature enacted that the invitation to bid should be printed in weekly newspapers for not less than four weeks, and in the same connection required that the specifications upon which the bids were to be submitted should be of record at least four weeks, the legislative intention manifestly was that these periods of time should be concurrent. The four weeks during which the advertisement must be published, are the same four weeks during which the specifications must be of record; to fix one is to determine the other. The requirement as to the specifications is that they must be of record and open to the inspection of all persons for at least four weeks before the time appointed for the opening of the proposals. This requirement would not be met by having the specifications of record for months before if they were permitted to be withdrawn from the record during any part of the last four weeks immediately prior to the opening of the bids.

The commissioners have a discretion to place the specifications of record and keep them open for inspection for a longer period,

but they must do those things during the last four weeks. The requirement as to the specifications is not that they shall be of record for a certain number of days in the week, they must be of record every day of the four weeks; that is, full twenty-eight days immediately prior to the opening of the bids. This determines the four weeks during which the public advertisement of the invitation to bidders must be printed in the weekly newspapers. A weekly newspaper, regularly issued, must necessarily be printed four times, that is it must have four publications within those four weeks. The commissioners have a discretion to advertise for a longer period, but no antecedent advertisement could excuse the failure to advertise weekly during the last four weeks immediately prior to the day upon which the bids are opened.

The relation of the things required to be done by this statute to each other, the manifest intention that the publication shall be during the same period that the specifications are on file, and the clearly defined purpose that the latter period must be the four weeks ending with the day before the proposals are opened, lead us to the conclusion that the period during which the advertisement required by this statute must be printed in two weekly newspapers, for four weeks, is the last twenty-eight days prior to the opening of the bids. Computing backward from July 9, 1903, it appears, that, under the undisputed facts of this case, the advertisement was regularly published in two weekly newspapers during each week of said period. This answered the requirements of the statute. The invitation to bidders must be published weekly, four times, in two weekly newspapers, but the first publication is not required to be twenty-eight days before the opening of the bids. The period during which the specifications are required to be of record must determine the days upon which the weeks are to be considered as beginning and ending, for the purposes of this statute.

The judgment is affirmed.

*Error assigned* was the judgment of the Superior Court.

*James S. Moorhead*, with him *John B. Head* and *H. C. Beistel*, for appellant.

*W. H. S. Thomson*, with him *Frank Thomson* and *Denna C. Ogden*, for appellees.

OPINION BY MR. CHIEF JUSTICE MITCHELL, November 4, 1904:

The Act of April 4, 1870, P. L. 834, is entitled " An act relative to contracts by county commissioners in certain counties of this commonwealth," and is a local and special act applying only to eleven counties named. The Act of April 19, 1895, P. L. 38, is entitled " An act to regulate the erection of county buildings," and is a general act applying in terms to the whole state. The first question in this case is whether the prior act is repealed by the later.

Repeal is wholly a question of legislative intent. Where, as here, no such intent is expressed but must be found, if at all, in necessary inference, certain general principles or presumptions have been established as aids in the discovery of the actual intent. The one with which we are concerned is that a local is not repealed by a general act on the same subject, even with conflicting provisions. A local law presumably was passed to meet local and exceptional conditions, and a general statute to meet general conditions does not imply that the local conditions have changed, or that the legislature intends to change the law which it had previously deemed necessary or appropriate to such conditions. " Rarely, if ever, does a case arise where it can justly be held that a general statute repeals a local statute by mere implication : " Malloy v. Com. ex rel. Reinhard, 115 Pa. 25 ; Com. v. P. & E. R. R. Co., 164 Pa. 252, 261 ; Com. ex rel. v. Summerville, 204 Pa. 300.

This principle has been so repeatedly declared that it would not be necessary to reiterate it here, except to recall its application in connection with the claim of the appellant that a different rule should prevail in the present case. The argument is very clearly expressed in the following quotation from appellant's supplementary paper-book : " It will be conceded that the parties are squarely at issue on the question whether or not, since the adoption of the new constitution, our courts, in determining that a general Act of Assembly regulating the affairs of counties, boroughs or townships, does or does not repeal a special or local act on the same subject passed prior

to 1874, are to be guided by precisely the same rules of construction theretofore existing, or whether such rules have, since that date, been modified and changed ? "

On this point a number of cases have been cited by both parties, and as it is likely to arise frequently in the future it is desirable to notice briefly the decisions most directly bearing on it, with a view to a definitive settlement of the rule.

Appellant relies largely on Com. ex rel. v. Macferron, 152 Pa. 244 ; Quinn v. Cumberland Co., 162 Pa. 55 ; Chalfant v. Edwards, 176 Pa. 67, and particularly Com. ex rel. v. Wunch, 167 Pa. 186.

Com. ex rel. v. Macferron and Quinn v. Cumberland Co. were decided on the legislative intent in the acts on classification of municipalities. In the former it was said that the rule as to local and general acts was not questioned, but " the nature and purpose of the classification acts and the laws enacted for the separate classes are of a character to exclude the operation of the rule. They are intended to revise the laws relating to municipal affairs so as to reduce all former types and forms of municipal government, almost as numerous as the cities in the state, to three, one for each class ; and to substitute the class form in lieu of the previously existing form in every city of the class."

Of Com. ex rel. v. Wunch it might be enough to say that it has been overruled as having overlooked the limited scope of the act there in question, and the saving clause of another to which it was in effect only a supplement : Com. ex rel. v. Couch, 209 Pa. 354. The decision, however, was founded on the same principle as Com. ex rel. v. Macferron, but an improvident expression in the brief per curiam opinion has led appellant to give the case much too wide a scope. " Since the adoption of the present constitution," said Justice WILL-IAMS, " the legislature has sought to bring about uniformity in the administration of the affairs of counties and townships as well as those of cities and boroughs. The constitution requires this, and we have felt constrained to interpret statutes relating to these subjects in the light of the constitutional requirements." This was an inadvertent slip in expression. The constitution makes no requirement of uniformity, and the courts have neither desire nor authority to bring about such a result

except in obedience to a statutory expression of the legislative intent. What the constitution does require as to legislation upon the affairs of counties, municipalities, etc., under sec. 7 of article 3, is that it shall not be local or special, but general. Uniformity is not in itself a requirement, but one of the tests, judicially established, of the question whether an act is local, special or general, and it is nothing more : Stegmaier v. Jones, 203 Pa. 47.

What these cases decide and are authority for, is that as the legislative intent in the classification of municipalities is apparent, to make a uniform system and framework of government, public officers, powers and duties in each class, the presumption is that as to such matters, local acts must give way to the general act of classification, wherever they conflict.

This modification of the rule, however, must not be pushed too far, but confined to the subjects to which the legislative intent clearly applies. The constitution itself does not compel uniformity by the repeal of local laws, even in the article prohibiting local legislation. It was held in Evans v. Phillipi 117 Pa. 226, that " the constitution in its prohibitions of special legislation is prospective only, and does not effect a repeal of local statutes with inconsistent provisions in force at the time of its adoption ; nor was its intent and meaning that all future legislation should be conditional on the repeal of such local laws." Even in Com. ex rel. v. Macferron, which perhaps goes farthest in that direction, the decision is carefully limited and it is held that classification of cities is for the purpose of regulating " the exercise of certain corporate powers, and the number, character, powers and duties of certain corporate officers " and that the legislative intent is equally plain " to leave each city in the full enjoyment of all its powers, rights and privileges not superseded by the uniform scheme or plan of municipal government provided for the class into which such city may come. As was held in Com. ex rel. v. Wyman, 137 Pa. 508 the transition of a city from one class to another works such change in its government as the law makes necessary to adjust it to the class into which it goes. In other respects it works no change, but the city brings all its municipal belongings with it into the new class."

Chalfant v. Edwards, supra, and McCleary v. Allegheny Co.,

163 Pa. 578, are based on a similar modification of the rule that where as said by our Brother DEAN in the latter case, the general act is in harmony with the constitution and clearly passed to carry it into effect the local must give way.

In Malloy v. Com. ex rel., 115 Pa. 25, it was said, "the constitution upon many subjects prohibits local or special legislation, but it changes no rule relative to the repeal, by legislation, of local laws existing when it was adopted." No subsequent case is in conflict with the principle of this decision.

The result of the cases may be summed up as follows :

First, the rule that a general statute does not repeal by implication a local act with different or inconsistent provisions, is still the prevailing rule.

Secondly, but the rule being founded on a presumption of legislative intent, will not apply when a contrary intent is clearly apparent.

Thirdly, where the clear general intent of the legislature is to establish a uniform and mandatory system as in the municipal classification acts, the presumption must be that the local acts are intended to be repealed.

Fourthly, where an act is passed to carry into effect a mandatory general provision of the constitution, the presumption must be that it was intended to repeal even local acts inconsistent with its terms.

Regarding the acts of 1870 and 1895 in the light of these rules it is clear that the former is not repealed unless there is evidence in the language of the latter that such was the intent. The act of 1870 is a local act, and could not now be passed in view of the prohibitions in section 7 of article 3. But the constitution did not repeal it, nor did it command the legislature to do so. The act of 1895 was not passed to carry out any constitutional mandate, and its effect therefore must be limited by the rule as to local and general acts, unless its language and purpose indicate an intent to establish a uniformity on the subject of its provisions that shall be compulsory even upon local and special acts.

We do not find any sufficient ground for the inference of such intent. The scope of the two acts is not the same nor do either the titles or the language of the two indicate that the

legislature had the same subject in contemplation. The title of the act of 1870 relates to contracts by county commissioners and the act is primarily a limitation on the commissioners' power. Prior to its passage, and in counties to which it did not apply, the commissioners being duly authorized by two grand juries and the quarter sessions under the act of 1834 to build a courthouse or county building, made the contract at their own discretion as to size, style, cost, etc., without reference to the approval of any other official: Mahon v. Luzerne Co., 197 Pa. 1, 18. But by the provisions of the act of 1870, before making any contract for the erection of new buildings, or bridges, or for alteration or addition thereto, the commissioners are required to take certain proceedings, among which is obtaining the approval of one of the judges of the common pleas. It is a carefully drawn act covering the subject with much particularity and detail. There may have been a reason why the commissioners in the counties named should be deprived of some of the powers exercised by commissioners in other counties. Whatever the reasons may have been, we must assume that special and local conditions required this special and local change in the law, and there is nothing to show that the legislature regarded these conditions as having ceased in those counties or having newly arisen in the rest of the state.

The act of 1895, on the other hand, is a single section of eleven lines, in general terms, with little detail, and of narrower scope. Its provisions are confined to "the erection of a court house, jail or other county building." The building of bridges and of alterations or additions to county buildings, is left under the act of 1870 or under the general powers of commissioners in other counties to which that act does not extend. The subjects of the two acts, therefore, though closely related, are not identical, and it does not seem reasonable to suppose that the legislature regarded them as the same and meant the later act to repeal part of the earlier one, leaving so important a portion of the subject admittedly untouched.

We are of opinion, therefore, that the act of 1870 is not repealed by the act of 1895.

The second question raised by the assignments of error, whether the provisions of the act of 1870 as to advertisement, etc., were complied with, is so satisfactorily answered in the

opinion of the Superior Court that we need not attempt to add anything to it.

Judgment affirmed.