## Tosh v. Schlottman, Controller.

*Public officers—Compensation—Directors of the poor—Schuylkill County —Poor law—Local statutes—Repeal—Constitutional law—Acts of April 4, 1831, June 4, 1879, June 12, 1907, May 10, 1917, and March 30, 1921.*

1. The Constitution allows local and special legislation on all subjects not forbidden by it.

2. The framers of the Constitution of 1874 intentionally omitted from the clauses against local or special legislation any reference whatever to poor districts.

3. Legislation for poor districts, even though it be local in character, is not forbidden by the Constitution, and if the provisions of section 8, article iii, of the Constitution, be complied with in the enactment of such legislation, it will be, as a general rule, constitutional.

4. The salaries of directors of the poor must be determined in each poor district from the statutory laws as they affect the district concerned.

5. The Special Act of April 4, 1831, P. L. 422, created a poor district coextensive with Schuylkill County and made the directors thereof a body politic and corporate in law.

6. The Act of April 4, 1831, was not repealed or affected by the Act of June 4, 1879, P. L. 78, inasmuch as local acts relating to poor districts were expressly exempted.

7. The Act of March 30, 1921, P. L. 62, entitled "An act declaring the directors of the poor in poor districts coextensive with a county to be county officers," while making the directors of the poor in Schuylkill County county officers, does not affect their salaries.

8. The Act of March 30, 1921, does not abolish the Poor District of Schuylkill County as a separate entity or relieve the directors of any duty whatever in directing the affairs which concern only the poor.

9. The compensation of Directors of the Poor of Schuylkill County is fixed by the Act of June 12, 1907, P. L. 529, as amended by the Act of May 10, 1917, P. L. 179, at $2500 per annum, and these acts were not repealed by the Act of May 24, 1917, P. L. 293, passed at the same session.

10. A general statute does not repeal by implication a local act with different or inconsistent provisions.

Petition for mandamus. C. P. Schuylkill Co., March T., 1922, No. 49.

*John H. Fertig,* for plaintiff; *E. D. Smith* and *A. L. Shay,* for defendant.

Koch, J., April 17, 1922.—The question in this case is, what is the lawful salary of the petitioner as one of the directors of the poor district composed of the County of Schuylkill?

By a special Act of Assembly approved April 4, 1831, P. L. 422, a poor district coextensive with this county was created and put in charge of directors, the 3rd section of the act providing: "That the said directors shall forever hereafter, in law and in fact, be one body politic and corporate in law, to all intents and purposes whatsoever relative to the poor of the County of Schuylkill, and shall have perpetual succession, and may sue and be sued, plead and be impleaded, by the name, style and title of 'The Directors of the Poor and of the House of Employment for the County of Schuylkill,'" etc. A vacancy having been created by the death of John M. Coombe, one of the directors of the poor, Thomas Tosh was duly appointed and qualified for the office on Aug. 22, 1921, and since that date has received a salary at the rate of $1200 per annum, but he claims that he is entitled to $2500 per annum, as fixed by the local or special Act of May 10, 1917, P. L. 179, payable semi-monthly out of the county treasury on warrants of the directors of the poor, and that it is the duty of the county controller to countersign said warrants. The controller refuses to do so, and this case is based upon his refusal to sign a warrant for $208.33, drawn by the directors of the poor on Dec. 30, 1921, for the payment of the petitioner's salary for the month of December, 1921. The

2 D. & C.

county controller claims that the warrant for $208.33 was illegally drawn for an amount in excess of the salary legally due the petitioner for the month of December, 1921. The county controller contends that directors of the poor in this county are now county officers by virtue of the Act of March 30, 1921, P. L. 62, and that the Special Act of May 10, 1917, P. L. 179, is of no avail. That directors of the poor in this county were not county officers prior to March 30, 1921, is undoubted, because the 1st section of the 14th article of the Constitution names all the county officers, and directors of the poor are not among them. But the same section provides for the establishment of other county officers. The Act of 1921, just referred to, is entitled "An act declaring the directors of the poor in poor districts coextensive with the county to be county officers." Its preamble clearly shows that the act is meant to include all "poor districts coextensive with counties whose affairs have been administered by directors of the poor elected by the qualified voters of the county under special acts of assembly as quasi-municipal corporations, whose property and maintenance have been provided for out of the public treasury of the county, and maintained at the public expense." This act declares all the directors of the poor of such poor districts "to be county officers and subject, in the discharge of their duties and obligations as directors of the poor, to all the general laws relating to county officers." And "all acts of assembly, general, local or special, relating to the office of directors of the poor, inconsistent" with the said act are thereby repealed. Therefore, notwithstanding the fact that "the directors of the poor and of the house of employment for the County of Schuylkill" are a separate entity, as a quasi-municipal corporation, the said directors of the poor are now county officers in this county by virtue of said Act of 1921, although they exercise duties only as officers of the poor district which is coextensive with Schuylkill County. This situation may be contrasted with county commissioners, who act as directors of the poor under the provisions of the Act of June 4, 1879, P. L. 78. In the latter case the Supreme Court said in Melvin v. Summerville, 210 Pa. 41, 43: "It is true that the county commissioners and the county treasurer are ex officio made the officers through whom the district acts, but they are none the less district officers and not county officers while so acting." Whilst the Act of 1879 is intended to make every county in the State a poor district, it has no application to this county, because the 21st section of the act provides that it "shall not be construed to repeal any local act or acts in which poorhouses or houses for relief of the destitute have been erected or are now managed." And the Act of June 4, 1879, P. L. 78, has been clearly declared to be constitutional: Rose v. Beaver County, 204 Pa. 372.

The case before us questions the constitutionality of the various poor laws enacted for the poor district in this county since 1874, on the ground that they are local in character and effect, and, therefore, must be void. We will give that question consideration further on. First, let the writer say he does not believe that the Constitution forbids the enactment of local laws for the benefit of the poor anywhere in this State, as the Constitution nowhere in specific terms forbids local legislation for poor districts. From the time that Pennsylvania was a colony to the present it has always been solicitous for the poor, "For ye have the poor always with you." At an assembly held at Chester in December, 1682, provision was made for persons falling "into decay and poverty:" Chapter 32 Duke of Yorke's Book of Laws, 115. In such case, complaint was made to the justices of the peace in the same county, who, finding the complaint to be true, made provision for the poor in such a way as they

Tosh *v.* Schlottman, Controller.

saw convenient until the county court, and then care was taken for their comfortable subsistence. But the act was abrogated by William and Mary, King and Queen, in 1693, after the control of the government of the province had been taken from William Penn: Ibid., 539. But the poor were not neglected after such abrogation, and an act was passed on Nov. 27, 1700, making it the duty of the justices of the peace and overseers of the poor to take due care to relieve such poor: Chapter 23, Volume 2 Statutes at Large of Pennsylvania, 20. On Jan. 12, 1705, the General Assembly passed another act for the better relief of the poor in this province, which provided that the justices of the peace, or any three or more of them, should meet in the respective counties and nominate one, two or more substantial inhabitants of the respective townships to be overseers of the poor of said townships for the ensuing year, and where the townships were small and the inhabitants few, two or more townships, as the justices should hold fit, could be joined together within their county. The overseers were given authority to levy and collect taxes in their respective townships to be employed for the relief of the poor: Chapter 154, Volume 2 Statutes at Large of Pennsylvania, 251. And ever since the passage of that act we have had poor districts and overseers of the poor, or directors of the poor, throughout the Commonwealth. By the 2nd section of an act entitled "An act for amending the laws relating to the poor," passed Aug. 19, 1749, Volume 5 Statutes at Large of Pennsylvania, 79, it was provided: "That the said overseers of the poor for the several townships, city and boroughs aforesaid, for the time being respectively, shall forever hereafter, in name and in fact, be and they are hereby declared to be bodies politic and corporate in law to all intents and purposes, and shall have perpetual succession, and by the name of overseers of the poor of the said respective townships, city or boroughs may sue and be sued, and plead or be impleaded, in all courts of judicature within this province, and by that name shall and may purchase, take or receive any lands, tenements or hereditaments, not exceeding the yearly value of five hundred pounds, and also any goods or chattels whatsoever, to and for the use and benefit of the poor of each of the said townships, city or boroughs respectively of the gift, alienation or devise of any person or persons whomsoever, to hold to them, the said overseers and their successors in the said trust, for the use of the said poor respectively forever." Other acts were passed until March 9, 1771, when the General Assembly passed a general act of great length entitled "An act for the relief of the poor:" 1 Smith & Reed, 332.

In the course of time special legislation was passed enlarging poor districts by making a whole county a single district, as in the Counties of Chester and Lancaster, by the Act of Feb. 27, 1798, 3 Smith & Reed, 306, in which cases the office of overseers of the poor was abolished and directors of the poor were elected by the people. Adams County was made a poor district by the Act of March 24, 1817, 6 Smith & Reed, 457, and Schuylkill County was made a poor district by the Act of April 4, 1831, P. L. 422. In fact, very many of the counties in this State were made poor districts by special acts of assembly prior to the adoption of the Constitution of 1874. And by a special Act approved March 25, 1862, P. L. 178, parts of two counties were taken and erected into one district, by the name of the Middle Coal Field District, which was originally composed of the Borough of Hazleton and the Townships of Hazle and Foster in the County of Luzerne, and the Boroughs of Mauch Chunk and East Mauch Chunk and the Townships of Banks, Lusanne and Mauch Chunk in the County of Carbon. Since the passage of that act the Borough

2 D. & C.

Tosh v. Schlottman, Controller.

of Hazleton has become a city, but still remains a part of the Middle Coal Field District. Since then the said district has been enlarged so as to include other municipal divisions in the Counties of Luzerne and Carbon. This district has been the subject of special legislation since 1874, the last act relating thereto being that of May 25, 1917, P. L. 305. The most general legislation since the adoption of the Constitution of 1874 is the Act approved June 4, 1879, P. L. 78, the 1st section of which reads as follows: "Be it enacted, etc., That for the purpose of furnishing relief to the poor, destitute and paupers, giving them employment and carrying out the provisions of this act, each county of this Commonwealth is hereby created a district, to be known as '———— county poor district.'" But under the provisions of this act the whole subject of the poor is committed to the county commissioners of each county, who have control, management and direction of the property and of all things necessary for the maintenance and employment of the poor, and the treasurer of the county is ex officio treasurer of the poor district and receives all moneys and pays out the same upon warrants drawn by the county commissioners, who fix his compensation for such services. The duties theretofore performed by overseers of the poor are now done and performed by the county commissioners; whereas, in all the other poor districts, which are not affected by the Act of 1879, the districts are still managed by overseers or directors of the poor. Hence, it is seen that poor districts were of great number and variety all over this State at the time when the constitutional convention framed the so-called Constitution of 1874, and that the Act of 1879 added to the variety. Of course, all the members of that intelligent convention knew that the State was filled with a great variety of "poor districts," and when they framed article III (Legislation), they did it with such intelligent care and circumspection as not to prevent the people in the various localities of the State from caring for the poor as they had always cared for them in the past or might wish to care for them in the future.

It is, therefore, my belief and opinion that the constitutional convention studiously and designedly omitted from the inhibitory clauses against local or special legislation any reference whatever to *poor districts*.

The following quotations, taken from the 7th section of said 3rd article of the Constitution, are significant:

"The General Assembly shall not pass any local or special law:

"Regulating the affairs of counties, cities, townships, wards, boroughs or school districts.

"Erecting new townships or boroughs; changing township lines, borough limits or school districts.

"Creating offices or prescribing the powers and duties of officers in counties, cities, boroughs, townships, election or school districts.

"Regulating the management of public schools, the building or repairing of school-houses, and the raising of money for such purposes."

Thus we find that every form of district existing at the time when the convention sat is mentioned in the inhibitory clauses of the Constitution excepting *poor districts*.

Generally speaking, local or special legislation is forbidden concerning liens, affairs of counties, cities, townships, wards, boroughs, school districts, changing names of persons or places, changing venues, concerning roads, highways, streets, alleys, cemeteries, public grounds not of the State, adoption of children, incorporating cities, concerning townships, villages, elections, divorces, descent or succession, rules of evidence, justices of the peace, con-

2 D. & C.

stables, rates of interest, minors, fines, penalties, taxation, labor, trade, mining, manufacturing, etc., but not one word concerning the poor or poor districts. *Expressio unius est exclusio alterius.* Surely that intelligent convention could not by oversight have omitted all reference to the poor. The delegates meant not to include the poor within their inhibitions or they would have mentioned poor districts as well as election and school districts.

The Constitution allows local or special legislation on all subjects not forbidden by it. This is necessarily implied from the language of the 8th section of article III, which section reads as follows: "No local or special bill shall be passed unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated, which notice shall be at least thirty days prior to the introduction into the General Assembly of such bill, and in the manner to be provided by law. The evidence of such notice having been published shall be exhibited in the General Assembly before such act shall be passed."

Mr. Justice Clark, who was a member of the constitutional convention, gave an important hint along this line of argument in Jenks Township Poor District v. Sheffield Poor District, 135 Pa. 400, 409, when he said: "The convention being conversant with the manifold forms in which the public charity was dispensed—in county poorhouses and in district poorhouses organized under both general and special laws, in hospitals and homes supported by contributions both public and private, and through the ordinary agency of the overseers or directors of the poor—may have deemed it unwise to interrupt the course of legislation on this subject or to restrict the relief and employment of the poor to any one uniform or general system for the whole State, prefering rather that the hand of charity might be freely extended in any form which the legislature from time to time might provide." The justice bears witness to the fact that the convention knew of the existence of poor districts as local entities in Pennsylvania just as well as they knew of school districts and other local entities in the State, and yet they avoided naming the poor districts in the fundamental law of the State.

"It must not be lost sight of that the attitude of courts is not one of hostility to acts whose constitutionality is attacked. On the contrary, all the presumptions are in their favor, and courts are not to be astute in finding or sustaining objections:" Sugar Notch Borough, 192 Pa. 349, 355. To say that poor district administrations are "the affairs of counties, cities, townships, wards, boroughs or school districts" is to do violence to that clause of the 3rd article of the Constitution which forbids local legislation for such affairs. For, as has been already shown, every poor district in this State, whether it be composed of one or many municipal divisions, is a separate corporate entity ever since the passage of the Act of Aug. 19, 1749, Volume 5 Statutes at Large of Pennsylvania, 79. They have been so often declared entities separate and apart from counties, townships and other municipal divisions that a few citations will answer the purpose of sustaining the assertion: Tucker's Appeal, 271 Pa. 462; Com. v. Bowditch, 217 Pa. 527; Nissley v. Lancaster County, 215 Pa. 562, and Melvin v. Summerville, 210 Pa. 41.

We conclude that legislation for poor districts, even though it be local in character, is not forbidden by the Constitution, and that, if the provisions of the 8th section of the 3rd article of the Constitution be complied with in the enactment of such legislation, it will be, as a general thing, constitutional. As to local or special acts, it is presumed that the requirements of the said 8th section have been complied with: Perkins v. Philadelphia, 156 Pa. 554.

2 D. & C.

Tosh v. Schlottman, Controller.

We conclude, therefore, that the salary of directors of the poor must be determined in each poor district from the statutory laws as they affect the district concerned. Our attention has been called to various acts of assembly bearing on the subject, and we will make such reference to each of them as we deem necessary.

The Act of July 2, 1895, P. L. 424, amends the Salary Act of 1876, which was passed to fix the salaries of county officers in counties containing over 150,000 inhabitants. This amending act relates only to counties having a population of not less than 150,000 and not more than 250,000, and, *inter alia*, provides a salary "Of county directors of the poor, each fifteen hundred dollars." But at that time there were no such officers as county directors of the poor anywhere in this State. The Act of June 4, 1879, P. L. 78, did not make the county commissioners county directors of the poor; it simply gave them "control, management and direction" of the "———— *county poor districts;*" ". . . but they are none the less *district* and not *county* officers while so acting:" Melvin v. Summerville, 210 Pa. 41, 43, 44. Besides, it has been directly decided that the Act of 1895 does not apply to our poor district: Phillips *v.* Kantner, 39 Pa. Superior Ct. 570; nor to the poor district of Lancaster County, which much resembles our own: Nissley *v.* Lancaster County, 215 Pa. 562. But the county controller contends that now, as the directors of the poor are made *county* officers by the Act of March 30, 1921, P. L. 62, the Act of 1895 fixes their salary at $1500, unless it has been changed by later legislation.

The next legislation concerning salaries of directors of the poor was passed in 1907. There were three acts passed in that year: the first act was approved on the 8th of June, P. L. 487; the second on the same date, P. L. 487, and the third on the 12th of June, P. L. 529. As the last one of these was passed specially for the poor district in this county, it controlled the matter for the time being and fixed the salary at $1200.

However, in 1909, an act was approved on the 3rd of May, P. L. 382, amending the first act approved June 8, 1907, P. L. 487. That act provided, "That the salary of *county* poor directors in counties of over one hundred and fifty thousand population shall be fifteen hundred dollars per year," and the Act of May 3, 1909, amended it so that "The salary of county poor directors in counties of over one hundred and fifty thousand population and not over two hundred and twenty-five thousand shall be one thousand dollars per year; and in counties of over two hundred and twenty-five thousand population and not over three hundred and twenty-five thousand shall be fifteen hundred dollars. . . . Provided, however, that this act shall not in any way affect any counties now paying their said poor directors more than two thousand dollars per year." As there were no *county* poor directors in this county, the Act of 1907, as amended in 1909, did not apply. It was again amended on May 24, 1917, P. L. 293, and provides: "That the salary of county poor directors in counties containing over one hundred and fifty thousand and less than three hundred and twenty-five thousand inhabitants shall be fifteen hundred dollars per annum; in counties containing over three hundred and twenty-five thousand and less than five hundred thousand inhabitants shall be two thousand dollars per annum, and in counties containing over five hundred thousand inhabitants shall be two thousand and five hundred dollars per annum." Counsel for the controller contends that this act should control and fix the salary of the petitioner at $1500 per annum, because the poor directors are now county officers.

Next, our attention has been called to an Act approved June 15, 1911, P. L. 986, as amended by the Act of July 11, 1917, P. L. 768, but those laws have no

application, as they refer to poor districts composed of several townships, boroughs and cities situate wholly within counties of this Commonwealth, and do not include poor districts respectively coextensive with an entire county.  See Fayette County Poor Directors *v.* County Controller, 40 Pa. C. C. Reps. 357.

The Act of June 12, 1907, P. L. 529, relates only to Schuylkill County, and fixed the salary of poor directors at $1200 per annum, but it was amended on May 10, 1917, P. L. 179, changing the salary from $1200 to $2500 per annum. And, as the amending act was passed at the same session as the Act of May 24, 1917, P. L. 293, which latter act says "That the salary of county poor directors in counties containing over one hundred and fifty thousand and less than three hundred and twenty-five thousand inhabitants shall be fifteen hundred dollars," the latter act does not repeal either of said two local acts.  It contains no repealing clause.  It must not be overlooked that the act which fixed county poor directors' salaries in 1907, P. L. 487, was approved four days before the Local Act of 1907, P. L. 529, and that the 4th section of the latter act is: "All acts or parts of acts inconsistent herewith are hereby repealed."  Therefore, as to Schuylkill County, the poor directors were entitled to receive only $1200 and not $1500 per year.

"The result of the cases may be summed up as follows: First, the rule that a general statute does not repeal by implication a local act with different or inconsistent provisions is still the prevailing rule:" Com. *v.* Brown, 210 Pa. 29, 39.  The Local Act of 1907 not only fixes the salary at $1200, but it also allows each director "all necessary expenses incurred in the discharge of his duties, subject to the approval of the county controller."  That was to meet exceptional conditions in this county, where so many people require outdoor relief that a poor director's expenses in attending to such cases is not inconsiderable.  Mr. Chief Justice Mitchell said, also, in Com. *v.* Brown, 210 Pa. 29, 36: "A local law presumably was passed to meet local and exceptional conditions, and a general statute to meet general conditions does not imply that the local conditions have changed or that the legislature intends to change the law which it had previously deemed necessary or appropriate to such conditions.  'Rarely, if ever', does a case arise where it can justly be held that a general statute repeals a local statute by mere implication:' Malloy *v.* Com. ex rel. Reinhard, 115 Pa. 25; Com. *v.* P. & E. R. R. Co., 164 Pa. 252, 261; Com. ex rel. *v.* Summerville, 204 Pa. 300."  The Act of May 24, 1917, P. L. 293, was approved fourteen days after the Local Act of May 10, 1917, P. L. 179, but it contains no repealing clause.  On the contrary, it is therein "Provided, that this act shall not in any way affect any county now paying the poor directors more than two thousand dollars per year."  And as the Local Act of May 10, 1917, P. L. 179, was approved fourteen days before the act just quoted from, and fixed $2500 salary "in full and in lieu of all other compensation," and took effect immediately upon its passage, the directors were then receiving more than $2000 and the local act was not repealed by the general act.

We do not think the Act of March 30, 1921, P. L. 62, which makes the directors of the poor *county* officers, affects their salary one way or the other.  It only declares them *county* officers, and that does not of itself abolish the poor district as a separate entity or make them other than directors of the poor, or relieve them of any duty whatever in directing the affairs which concern only the poor.  But they are now so-called *county* officers and "subject in the discharge of their duties and obligations as *directors of the poor* to all the general laws relating to county officers."  Receiving salary is not discharging either duties or obligations.  True, the 2nd section of the Act of 1921 says:

2 D. & C.

Tosh v. Schlottman, Controller.

"All acts of assembly, general, local or special, relating to the office of directors of the poor inconsistent herewith are repealed." But the act makes no reference whatever to salaries either in its title or in its body. Its only purpose is to declare the office of director of the poor a county office, but the directors are, nevertheless, to discharge their duties and obligations as directors of the poor. If the act provided that the poor district should be abolished and the care of the poor should be an *affair of the county*, and that the directors of that affair should be county officers, the legislative intent would have been more clearly expressed than it seems to me to be expressed in the act. Stress has been laid on the words *"affairs* of counties, cities, townships," etc., as they occur in the 3rd article of the Constitution, and it is contended that they are broad enough to include the care for the poor in counties, cities, townships, etc. I think that would be true if the care of the poor were an affair of the county, city or township, but it is not, for it has been the special affair of *districts* for over 170 years everywhere in this State. True, the territory and the people may be identical in both the county, city or township, and the poor districts thereof, but that does not make the corporate entities identical any more than an incorporated mining company owning all the territory in a township and having all the people thereof stockholders in it would be identical with the township or the poor district, although it would provide all the money for supporting the township and the poor district and the school district also. But none of the last three would be an affair of the mining company.

We conclude that the petitioner is entitled to a writ of peremptory mandamus.

And now, April 17, 1922, the petitioner's demurrer to the respondent's answer is sustained, and the prothonotary is directed to issue a writ of peremptory mandamus, requiring the county controller to approve the warrant in favor of Thomas Tosh for $208 for salary for the month of December, 1921, as a director of the poor.          From M. M. Burke, Shenandoah, Pa.